**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Aware Daud, Khadija Jama, Abdiaziz Ali Abdi, Sahra Farah, Anab Ibrahim, Fowsiya Gelle, Kiin Farah, Lul Esse Hersi, and Kasha Anna Sobania, | Civil No.: 06-4013 (DSD/JJG) |
| Plaintiffs and Proposed Class Representatives, | **REPORT AND RECOMMENDATION** |
| v. | |
| Gold'n Plump Poultry, Inc. and The Work Connection, Inc., | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came on for hearing before the undersigned Magistrate Judge on April 17, 2007, on Defendant The Work Connection, Inc.'s ("TWC") Motion for Partial Judgment on the Pleadings (Doc. No. 55). Plaintiffs were represented by Kelly Swanson, Esq. and Anne Regan, Esq. John McDonald, Jr., Esq. appeared on behalf of the moving defendant, TWC. Loren Lonergan, Esq. appeared on behalf of Defendant Gold'n Plump Poultry, Inc. ("GNP"). This motion has been referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(b) and D. Minn. LR 72.1.

**I.     Background**[1]

GNP is a poultry processing company. Compl. at ¶10. TWC is an employment agency. *Id.* at ¶11. GNP hired TWC to pre-screen, hire, and employ line workers for GNP's Cold Springs, Minnesota

---

[1] In considering TWC's Motion for Partial Judgment on the Pleadings, the Court construes all well-pleaded material facts of the non-moving party as true. *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)

production plant on a temporary basis. *Id.* at ¶13. If GNP was satisfied with the temporary employee's work after a trial period, it would hire the employee on a permanent basis. *Id.*

Plaintiffs are nine current or former GNP employees assigned to the Cold Springs production plant. *Id.* at ¶¶1-9, 27, 42, 58, 71, 89, 130, 151, 172. With the exception of Plaintiff Sobania, the Plaintiffs are all black Somali Muslims. *Id.* at ¶¶28-31, 43-46, 61-64, 72-75, 90-93, 111-114, 152-155, 173. Plaintiffs claim that while working at GNP, they were personally subjected to or observed GNP managers and supervisors discriminate against Somali Muslims on the basis of race, color, national origin, ancestry, ethnicity, creed, and religion by (1) refusing to allow them to leave their production line positions to pray, (2) assigning them to dirtier, more labor intensive and less desirable positions on the production line, and (3) failing to promote them. *Id.* at ¶¶16-17, 33-36, 47-52, 65, 76-83, 94-104, 115-123, 135-145, 156-166, 174-178, 184-210 (pp. 30-35).[2] Plaintiffs allege TWC and GNP conspired to screen out Somali applicants and employees who refused to denounce their religious beliefs, *id.* at ¶206a (p.40), and that GNP's and TWC's discrimination against Somali Muslims in favor of non-Somali, non-Muslim applicants and employees was systemic and continuous, and done to increase corporate, executive and management profit. *Id.* at ¶183.

Somali Muslims must pray at least five times a day, and must do so during specified times and in specified conditions. *Id.* at ¶¶19-25. GNP denied Plaintiffs' requests to permit Somali Muslim employees to pray for small amounts of time during the day. *Id.* at ¶192 (p. 32). Plaintiffs claim GNP threatened to terminate employees if they attempted to pray during the workday. *Id.*

---

[2] The Complaint erroneously uses paragraph numbers 189-210 twice. Thus, references to the pages of the Complaint are included where necessary to avoid confusion.

Plaintiffs further claim TWC discriminated against them by requiring Somali Muslim applicants seeking line positions at GNP to sign a waiver agreeing that they will not pray at work. *Id.* at ¶¶101, 120, 159, 206 (p. 35). Plaintiff allege TWC engaged in discriminatory conduct by requiring Somali Muslim applicants to sign a notice agreeing that they will work with and handle pork products, and by denying employment to Somali Muslims who refused to sign the pork-handling form. *Id.* at ¶¶ 206-07 (p. 35). Observant Somali Muslims do not handle pork. *Id.* at ¶206 (p. 35).

The night-shift at GNP is a less desirable shift than the day-shift. *Id.* at ¶185. Only twenty-percent of day-shift line employees at GNP are Somalis, whereas half of the line employees working the night-shift are Somali. *Id.* at ¶188. According to the Complaint, Somali line workers are assigned the dirtier and more labor-intensive positions on the line in comparison to similarly situated non-Somali employees. *Id.* at ¶¶34, 50, 95, 141-142, 174-175. Plaintiffs allege Somali Muslim employees at GNP are not provided with sufficient advancement opportunities despite the large number of Somali Muslim line workers at the Cold Spring facility. *Id.* at ¶¶198 (p. 33).

Plaintiff Sobania, a Caucasian, observed conduct by GNP employees she claims was discriminatory towards Somali Muslim employees, and avers these acts violated her personal right to work in an environment unaffected by racial discrimination and deprived her of the benefits of an integrated working environment. *Id.* at ¶¶173-180.

Plaintiffs filed this action on October 6, 2006. Plaintiffs assert claims under both federal and state law, including allegations of civil rights violations under 42 U.S.C. §§ 1981, 1985 and 1986, and violations of the Minnesota Human Rights Act ("MHRA"), Minn.Stat. 363A.01 *et. seq*. Plaintiffs seek class certification. The parties are currently engaged in discovery relating to class certification.

## II. Discussion

### A. Standard of Review.

Defendant TWC seeks partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the moving party is entitled to judgment as a matter of law. *Faibisch v. Univ. of Minn.,* 304 F.3d 797, 803 (8th Cir. 2002); *Potthoff v. Morin,* 245 F.3d 710, 715 (8th Cir. 2001). A court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party. *Id.*; *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (stating that courts review Rule 12(c) motions under the same standards that govern Rule 12(b)(6) motions). The court is, however, "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.,* 280 F.3d 868, 870 (8th Cir.2002); *see Westcott,* 901 F.2d at 1488. The court may consider the pleadings themselves, matters of public record, materials embraced by the pleadings, and exhibits attached to the pleadings. *See Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999). Dismissal under Rule 12 is warranted when it appears to a legal certainty that the plaintiff is entitled to no relief under any stated facts that could be proved in support of the claim presented. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### B. Minnesota Human Rights Act

*1. Counts Six and Eight: Minn. Stat. § 363A.08 – intentional discrimination*

In Counts Six and Eight, each of the Plaintiffs allege that TWC discriminated against them on the basis of race, national origin, and religion in violation of the MHRA. Defendant TWC moves to dismiss

Counts Six and Eight as to Plaintiffs Daud, Sahra Farah, Ibrahim, Gelle, Kiin Farah, Hersi, and Sobiana on the basis that these Plaintiffs lack standing to assert MHRA claims against it. TWC contends these Plaintiffs lack standing because they never had an employment relationship with TWC, and have not, and cannot, allege facts showing they have been personally harmed as a result of any action by TWC.[3]

Standing is a threshold matter that, if absent, prevents this court from exercising jurisdiction. *Arkansas Right to Life State Political Action Comm. v. Butler,* 146 F.3d 558, 560 (8th Cir.1998). *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) (holding that federal courts may not consider other issues before resolving standing, an Article III jurisdictional matter). The Constitution requires a party to satisfy three elements before the party has standing to bring suit in federal court, and these three elements are injury in fact, causation, and redressability. *Id.* at 102-03. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982). The party invoking federal jurisdiction has the burden of establishing these three elements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992).

Section 363A.08 of the MHRA prohibits "an employer" or "an employment agency" from discriminating against an employee or employment applicant on the basis of, among other things, race, national origin, or religion. Minn. Stat. § 363A.08, subd. 2-3. By its plain language, an MHRA

---

[3] In their opposition brief and at oral argument, Plaintiffs conceded that Sarha Farah, Anab Ibrahim, Fowsiya Gelle and Kasha Anna Sobania are not asserting individual or class-based claims against TWC under the MHRA. Therefore, to the extent the Complaint alleges MHRA claims by these Plaintiffs against TWC, the undersigned recommends the dismissal of their MHRA claims. The Court's analysis of the MHRA claims will hereafter focus on Plaintiffs Daud, Kiin Farah and Hersi.

discrimination claim brought pursuant to section 363A.08 may be asserted only against a plaintiff's employer. *See Arculeo v. On-site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005) (stating that Title VII imposes liability for employment discrimination only on an "employer") and *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 832 (8th Cir. 2002) (noting that because of the similarities between the MHRA and Title VII, the federal equivalent to the MHRA, Minnesota courts look to Title VII decisions in resolving MHRA claims). Thus, any Plaintiff pursuing a discrimination claim against TWC under section 363A.08 must allege and establish an employment relationship with TWC.

The MHRA defines "employee" to include a person "who is employed by an employer and who resides or works in this state." Minn.Stat. § 363.01, subd. 16. In determining the existence of an employment relationship under the MHRA, Minnesota courts consider five factors: (1) the right to control the means and the manner of performance, (2) the mode of payment, (3) the furnishing of materials or tools, (4) the control of the premises where the work is done, and (5) the employer's right to discharge. *Midwest Sports Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd.* 552 N.W.2d 254, 260 (Minn.App. 1996). The most important factor "is the right, not just the exercise, of the employer to control the details of the work." *Hunter v. Crawford Door Sales,* 501 N.W.2d 623, 624 (Minn.1993).

Here, the Complaint specifically alleges that Plaintiff Jama was an employee of TWC and that Plaintiff Abdi sought employment with TWC but was denied. Compl. at ¶¶ 2, 3, 42, 58-59. However, there are no similar allegations of an employment relationship between TWC and any other Plaintiff. Daud, Kiin Farah and Hersi specifically allege they were hired directly by GNP or through another employment agency. Compl. at ¶¶27, 130, 157. Under these circumstances, there was no time during which TWC could have possessed the right to control the circumstances of Daud's, Kiin Farah's or Hersi's work at

GNP, and the Complaint does not allege that TWC exercised any such control over Daud, Kiin Farah or Hersi. TWC's right to control the work GNP workers was limited to those employees TWC placed at GNP, and that control terminated at the end of a placed employee's six week trial period. Because Daud, Kiin Farah and Hersi were not placed at GNP through TWC, TWC possessed no rights to control the means and manner of the performance or employment status of these Plaintiffs at GNP. Consequently, Daud, Kiin Farah and Hersi can plead no facts that demonstrate a direct employment relationship with TWC, and cannot adequately allege they suffered injuries as a result of employment actions taken by TWC.

Daud, Kiin Farah and Hersi attempt to overcome their lack of direct employment relationship with TWC by asserting they have standing to bring their MHRA claims against TWC because TWC and GNP are joint employers. Plaintiffs argue that TWC, as a temporary employer of GNP workers, is liable for its own discriminatory conduct as well as for the discriminatory conduct of GNP. Daud, Kiin Farah and Hersi contend that because they were employees of GNP during the time that TWC placed workers in the GNP facility, they should be considered employees of both GNP and TWC, and thus have standing to assert federal and MHRA discrimination claims against both GNP and TWC.

A joint employer situation arises where two separate legal entities exist, but the two entities have chosen to handle certain aspects of their employer-employee relationship jointly. *Scheidecker v. Arvig Enterprises, Inc.,* 122 F.Supp.2d 1031, 1038 (D. Minn.2000). The Eighth Circuit applies a four factors test in determining whether a joint employer relationship exists: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Id.* at 1037-38. "A finding of joint employer is proper where one company has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other

7

employer." *Id.* at 1038.

In the case of temporary employers, courts examining the question of joint employers have looked to whether the temporary employer exercised "substantial control over significant aspects of the compensation, terms, conditions, or privileges of the borrowed employee's employment." *See Burdett v. Abrasive Engineering and Technology*, 989 F.Supp 1107, 1111 (D. Kan. 1997) (citations and quotations omitted). If the entities co-determine these matters, courts then look to whether both entities exercise significant control over the same employees. *See Sandoval v. City of Boulder, Colorado*, 388 F.3d 1312, 1324-25 (10th Cir. 2004).

The Complaint alleges GNP hired TWC to pre-screen, hire, and employ line workers for GNP's Cold Springs, Minnesota production plant on a temporary basis. If GNP was satisfied with the temporary employee's work after a trial period, it would "transition and formally hire" the employee on a permanent basis. Plaintiff Jama alleges that during her six-weeks trial period, TWC personnel advised her, and possibly others, that she was not allowed to use the bathroom for the first six weeks of her employment. Compl. at ¶47. The Complaint also generally alleges TWC "has gone as far as instructing its newly hired Somali employees who are assigned to work at [GNP], not to use the restroom for the first five to six weeks of their employment." *Id* at ¶ 191 (p.131-132). As the Court has already noted, the Complaint does not allege that Daud, Kiin Farah and Hersi ever sought employment with TWC, but instead attained employment with GNP through other means. As such, Daud, Kiin Farah and Hersi could not have been TWC employees who were "borrowed" by GNP but significantly controlled by TWC.

Federal courts have held that the joint employment determination is "employee-specific." *See Sandoval*, 388 F.3d at 1324. For example, the plaintiff in *Burdett* argued that an employer had over 300

employees because it was a joint employer with an employment agency that itself had over 300 employees. 989 F.Supp at 1107. The court disagreed, noting that only those agency employees over whom the employer exercised some control could be considered joint-employees. *Id*. at 1112; *see also Harris v. Community Resources Counsel*, 2005 WL 3050149 (D. Kan. Nov, 15, 2005) (requiring plaintiff to show joint employment with fifteen employees to reach Title VII statutory requirement, and stating "[s]imply demonstrating control over one employee is not enough to prove joint employer status for all employees of the organization.").

Consequently, even if this Court were to find Plaintiffs' allegations sufficient to allege the existence of a joint employment relationship between TWC and GNP, a finding it need not make here, any such joint employment relationship would apply only to Plaintiff Jama, and would not apply to Daud, Kiin Farah or Hersi.[4] Daud does not allege he was employed by TWC or that TWC ever exercised control over him. Kinn Farah and Hersi allege they were hired by GNP through Manpower, a different employment agency, and do not allege TWC employed them or exercised control over them. Under these circumstances, the Court concludes that Daud, Kiin Farah and Hersi were not TWC employees, and they cannot allege facts sufficient to demonstrate they were joint employees of TWC and GNP. The Court finds Daud, Kiin Farah and Hersi have failed to allege facts sufficient to demonstrate an employment relationship with TWC, and they cannot allege they suffered personal injury fairly traceable to any alleged discriminatory conduct by TWC. Daud, Kiin Farah and Hersi lack standing to assert claims of intentional discrimination under the

---

[4] While TWC denies that a joint employment relationship existed between TWC and GNP with regards to Plaintiff Jama, it does not challenge the sufficiency of Jama's MHRA claim in its instant Rule 12 motion. *See* Defendant's Reply Memorandum of Law at 6.

MHRA against TWC, and these claims should be dismissed with prejudice.

       *2. Count Seven: Minn. Stat. §363A.14 –aiding and abetting discriminatory practices*

  The MHRA provides that it is an unfair discriminatory practice for any person "intentionally to attempt to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter[.]" Minn. Stat. § 363A.14(2). To assert a claim of aiding and abetting discrimination under the MHRA, Plaintiffs must allege that TWC intentionally aided and abetted GNP's unlawful employment practices under the MHRA, or attempted to do so. *Id.*; *Ulrich v. City of Crosby*, 848 F.Supp. 861, 869 (D.Minn. 1994).

  Without citation to any authority, TWC contends that in order to successfully allege a claim of aiding and abetting discrimination against TWC, each plaintiff must first identify discriminatory acts allegedly taken by TWC against him or her personally. TWC argues Plaintiffs' Count Seven claims consist only of allegations that TWC attempted to aid and abet the discriminatory practices of GNP by requiring applicants for positions at Gold'n Plump to sign forms acknowledging that they will not pray at work and acknowledging that handling pork and pork products is an essential function of the job. TWC moves to dismiss Count Seven as to Plaintiffs Daud, Jama, Kiin Farah, and Hersi, on the basis that these Plaintiffs were never presented with either the prayer form or the pork handling acknowledgment form. TWC reads Plaintiffs' Complaint too narrowly.

  Section 363A.14(2) provides that an individual can be liable if he or she is found to have intentionally attempted to aid, abet, incite, compel or coerce another to engage in a forbidden employment practice under the MHRA. Unlike other sections of the MHRA, the language of the aiding and abetting provision does not restrict violations to employers or expressly require an employment relationship between

the claimant and the alleged aider or abettor. Moreover, Minn. Stat. § 363A.33 provides that "a person may bring a civil action seeking redress for an unfair discriminatory practice directly to the district court." There is no general qualification on the employment status or relationship between the person raising the allegations and the alleged violator. *See also Magnuson v. Peak Technical Services, Inc.*, 808 F.Supp. 500, 507 (E.D.Va.,1992) (citing *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir.1973) (stating Title VII's provision of a private right of action to "the person aggrieved" rather than an "employee" indicates inclusion of individuals who do not stand in direct employment relationship with an employer).

On the other hand, an individual raising an aiding and abetting claim must demonstrate that there has been some discrimination in violation of the MHRA. Otherwise, there is nothing to aid or abet and the claim cannot stand. *See Zelewski v. American Fed. Sav. Bank*, 811 F.Supp. 456, 464 (D.Minn. 1993). While the Court has determined Plaintiffs Daud, Kiin Farah, and Hersi cannot sufficiently allege intentional discrimination claims under the MHRA against TWC, neither defendant has challenged the sufficiency of Jama's, Abdi's, Daud's, Kiin Farah's, or Hersi's allegations of intentional discrimination in violation of the MHRA raised against GNP.

The Complaint alleges GNP discriminated against Plaintiffs by refusing to allow Somali Muslim employees to leave the production line to use the restroom in an attempt to prevent them from praying, by assigning Somali employees to the dirtiest and most labor-intensive jobs, and by failing to adequately promote Somali employees. The Complaint contains allegations that members of management and the human resources departments at both GNP and TWC conspired to further the discrimination of Plaintiffs by entering into an agreement designed to screen out Somali applicants who refused to denounce their

11

religious beliefs. Compl. at ¶ 206a (p.40).[5] Plaintiffs allege TWC and GNP conspired to prevent the hiring of Somali Muslims who refused not to pray during the work day and who refused to handle pork or pork products. *Id.*

Construing these allegations as true, and viewing all reasonable inferences in favor of the Plaintiffs, the Court concludes Jama, Abdi, Daud, Kiin Farah, and Hersi have sufficiently alleged claims of attempted aiding and abetting against TWC. This is because the Complaint alleges GNP intentionally discriminated against each of these Plaintiffs and it alleges GNP and TWC entered into an agreement to further the alleged discrimination. The Complaint also alleges TWC committed acts pursuant to this agreement. Thus, although these Plaintiff do not claim they were directly harmed by the acts of TWC, they allege acts that TWC aided and abetted, or attempted to aid and abet, the overall scheme of alleged discrimination by GNP. Thus, Jama, Abdi, Daud, Kiin Farah, and Hersi have sufficiently alleged claims against TWC under the aiding and abetting provisions of the MHRA.

Now, whether or not Jama, Abdi, Daud, Kiin Farah, and Hersi can individually demonstrate facts that connect discriminatory conduct by GNP to aiding and abetting conduct of TWC is a question properly addressed at subsequent stages of this litigation. However, dismissal at this point is inappropriate. Because Jama, Abdi, Daud, Kiin Farah, and Hersi have sufficiently pleaded facts to support their claim of attempted aiding and abetting under the MHRA, the Court concludes they are entitled to discovery regarding these claims. Accordingly, the Count Seven claims of Jama, Abdi, Daud, Kiin Farah, and Hersi should not be dismissed.

---

[5] Plaintiffs raise these specific allegations under their federal conspiracy claim, but incorporates these facts by reference into their claims of aiding and abetting under the MHRA.

### C. 42 U.S.C. § 1981

In Count Three, Plaintiffs allege a claim against TWC for intentional discrimination in violation of 42 U.S.C. § 1981. TWC alleges all of the Plaintiffs except Jama and Abdi lack standing to assert a section 1981 claim against TWC because they did not have a contractual relationship with TWC, and they do not allege that TWC took any discriminatory action against them to interfere with their employment relationship with GNP. TWC further argues Sobania also lacks standing because she is not a member of a protected class. Finally, TWC argues Jama and Abdi have failed to state a claim under section 1981 because their allegations are based on religion, which is not protected by section 1981. TWC seeks full dismissal of all section 1981 claims against it.

Section 1981 protects the right of all persons to "make and enforce contracts" without respect to race. *Domino's Pizza, Inc. v. McDonalds*, 126 S.Ct. 1246, 1249 (2006). Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To bring a claim under section 1981, Plaintiffs must initially identify the impaired contractual relationship under which they have rights. *Id.* at 1249-1250. By the allegations in the Complaint, Plaintiffs Daud, Sahra Farah, Ibrahim, Gelle, Kiin Farah, Hersi, and Sobiana admit that they had no contractual relationship with TWC. These Plaintiffs do not allege facts that TWC had control over their employment relationships with GNP that would be necessary to state a claim against TWC for interfering with their ability to contract with GNP. *See Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002) (stating that relief is available under § 1981 against defendant who uses authority to

13

preclude individual from securing a contract with a third party, but "this requires the individual to show that the party both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment").

Moreover, Plaintiffs cannot state a claim for discrimination under section 1981 based on TWC's alleged discriminatory practices against other Somali Muslims. *Domino's Pizza*, 126 S.Ct. at 1252 ("Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's"); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (affirming dismissal of claims of four plaintiffs who, although members of the class of persons allegedly discriminated against, failed to allege that they were personally discriminated against). Plaintiffs Daud, Sahra Farah, Ibrahim, Gelle, Kiin Farah, Hersi, and Sobiana do not allege they had a contractual relationship with TWC, and they cannot allege TWC interfered with their ability to contract with GNP. Consequently, these Plaintiffs lack standing to state a claim under 42 U.S.C. § 1981 against TWC.

Furthermore, an individual that is not a member of a protected class may pursue a section 1981 claim only if they were retaliated against for advocating the rights of racial minorities. *Bilello v. Kum & Go, LLC*, 374 F.2d 656, 660 (8th Cir. 2004). According to the Complaint, Plaintiff Sobania is not a member of a protected class, and she does not allege that she advocated for the rights of Somali Muslims or that she was retaliated against by TWC for doing so.

On the other hand, Plaintiffs Jama and Abdi have expressly alleged the existence of a contractual relationship with TWC. Notwithstanding these allegations, TWC argues the section 1981 claims of Abdi and Jama should be dismissed because they fail to allege acts of racial discrimination. TWC contends

Abdi's and Jama's section 1981 claims are limited to allegations of religious discrimination, which are not protected under section 1981.

Section 1981 claims are limited to racial and national origin discrimination. *See Johnson v. Railroad Express Agency*, 421 U.S. 454, 459-460 (1975); *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989) (stating "section 1981 only prohibits discrimination on the basis of race"). Although Jama and Abdi have established a contractual relationship with TWC sufficient to assert a claim under Section 1981, the Court finds Jama's and Abdi's claims only assert factual allegations of religious discrimination, acts which are not protected under section 1981.

Jama's and Abdi's factual allegations against TWC are all related to the practices and prohibitions of the Muslim faith, and their practice of them. Jama and Abdi, as Somali Muslims, seek to take breaks from the production line at several points during their shifts in order to offer prayers according to the rituals and requirements of the Muslim faith, but complain they are prevented from doing so. Jama specifically claims that during her six-week employment trial period she, and possibly others, were advised by TWC personnel not to use the bathroom for the first six weeks of her employment with GNP. *Id.* at ¶ 47. It is clear that Jama claims this discriminatory conduct was based on her Muslim religion, and not her race or ethnicity, because she further alleges that "Defendants allow non-Muslim employees to temporarily leave the production line for various reasons during the day, such as to use the restroom," but that Defendants "do not allow Muslim employees like her to leave the line to pray." *Id.* at ¶ 48. These are religious discrimination claims, and they cannot sufficiently state a claim under section 1981.

Likewise, Abdi alleges that as a Somali Muslim, he is forbidden from handling pork or pork products, and that TWC refused to hire him for placement at GNP because he refused to sign a pork

handling form TWC presented to him. *Id.* at ¶59. These allegations of discrimination are based on Abdi's religion, not his race or ethnicity. As such, they are insufficient to state a claim under section 1981.

In sum, Plaintiffs Daud, Sahra Farah, Ibrahim, Gelle, Kiin Farah, Hersi, and Sobiana lack standing to assert section 1981 claims against TWC. Jama and Abdi claims against TWC are based only upon allegations of religious discrimination, not racial discrimination, and cannot, therefore, support their section 1981 claims against TWC. Accordingly, the Court recommends the section 1981 claims against TWC be dismissed.

### D.     42 U.S.C. § 1985(3) and § 1986.

In Counts One and Two, Plaintiffs allege claims against TWC of conspiracy to deprive Plaintiffs of their Civil Rights and failure to prevent intentional discrimination in violation of 42 U.S.C. § 1985 and 42 U.S.C. § 1986. TWC contends that Plaintiffs cannot state a section 1985 or section 1986 claim against it because they have not stated a valid section 1981 claim.

Section 1985(3) makes it unlawful for two or more persons to conspire for the purposes of depriving any person or class of persons of the equal protection of the laws. 42 U.S.C. § 1985(3). Section 1985(3) is "a purely remedial statute, providing a civil cause of action when some otherwise defined federal right–to equal protection of the laws or equal privileges and immunities under the laws–is breached by a conspiracy in the manner described in the section." *Great American Fed Sav. & Loan Assoc. v. Novotny*, 442 U.S. 366, 376 (1979); *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004) (noting that "Section 1985 is a statute which provides a remedy, but it grants no substantive stand-alone rights [which] must be found elsewhere."). Section 1986 makes it illegal for a person to neglect or refuse to prevent, or to aid in preventing, the commission of a section 1985(3) violation. 42 U.S.C. §

1986. A claim under section 1986 is dependent upon a valid § 1985 claim. *Adams v. Boy Scouts of America – Chickasaw Council*, 271 F.3d 769, 774 n.8 (8th Cir. 2001).

The section 1981 claim is the only substantive federal claim alleged by the Plaintiffs against TWC. As set forth above, each of the Plaintiffs has failed to adequately assert a claim against TWC under section 1981. Consequently, none of the Plaintiffs can sufficiently state claims against TWC under sections 1985(3) or section 1986. These claims should therefore be dismissed.

### III. Recommendation

For all of the reasons stated herein, and having considered the parties' arguments, briefs, affidavits, exhibits and the entire record and file herein, **IT IS HEREBY RECOMMENDED** that Defendant The Work Connection, Inc.'s ("TWC") Motion for Partial Judgment on the Pleadings (Doc. No. 55) be **GRANTED IN PART and DENIED IN PART** as follows:

1. Count One (42 U.S.C. § 1985(3)), Count Two (42 U.S.C. § 1986), and Count Three (42 U.S.C. § 1981) be **DISMISSED** as to all Plaintiffs against Defendant The Work Connection;

2. Count Six (Minn. Stat. § 363A.08) be **DISMISSED only as to** Plaintiffs Aware Daud, Sahra Farah, Anab Ibrahim, Fowsiya Gelle, Kiin Farah, Lul Esse Hersi, and Kasha Anna Sobania against Defendant The Work Connection;

3. Count Seven (Minn. Stat. § 363A.14) be **DISMISSED only as to** Plaintiffs Sarha Farah, Anab Ibrahim, Fowsiya Gelle and Kasha Anna Sobania against Defendant The Work Connection; and

4. Plaintiff Kasha Anna Sobiana's Count Eight (Minn. Stat. § 363A.08) claim against the Work Connection be **DISMISSED**.

Dated: May 11, 2007　　　　　　　　　　　　　　　s/Jeanne J. Graham
　　　　　　　　　　　　　　　　　　　　　　　　JEANNE J. GRAHAM
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by May 31, 2007. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.